UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MYR EQUIPMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-00463-JPH-DLP |
| | ) | |
| PLANT SITE LOGISTICS, INC., | ) | |
| AM TRANS, INC., | ) | |
| FULL THROTTLE TRANSPORT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

MYR  entered into a contract with Plant Site for Plant Site to provide it
with transportation logistics solutions.  With Plant Site's assistance, MYR
entered into a contract with AM Trans for freight-broker services.  Pursuant to
that contract, MYR selected AM Trans as the broker for a project to move a
large crane and AM Trans hired Full Throttle as the carrier to move the crane.
During transit, the crane was involved in an accident and totaled.  The
question before the Court is whether Plant Site is entitled to summary
judgment on MYR's claim that Plant Site breached the contract with MYR by
not having verified Full Throttle's insurance.  Because the Plant Site/MYR
contract is ambiguous and there are triable issues of fact, the Court **DENIES**
Plant Site's motion.  Dkt. [73].

# I.
## Facts and Background

Under Rule 56(a), the Court views and recites the evidence in the light most favorable to MYR Equipment, LLC and draws all reasonable inferences in MYR's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

MYR provides heavy equipment to the utility-construction industry. Dkt. 1 ¶ 3. In May 2013, MYR and Plant Site Logistics, Inc. entered into a contract (the "Agreement") in which Plant Site agreed to help MYR find qualified brokers and motor carriers to ship MYR's equipment to its customers. Dkt. 74-1. To ensure that MYR only worked with qualified businesses, Plant Site agreed to "verify carrier and broker insurance certification." *Id.* at 2.

After entering into the Agreement, the owner of AM Trans, Inc. (a freight broker) and Full Throttle Transport, LLC (a motor carrier) asked Plant Site about doing business with MYR. Dkt. 74-2. Plant Site told MYR about the request, and MYR responded that it wanted to use AM Trans as a broker but did not want to use Full Throttle as a motor carrier because it had poor safety ratings. *Id.* at 1-2. After Plant Site verified that AM Trans had the required insurance, dkt. 74-3; dkt. 75 at 4, MYR, AM Trans, and Plant Site signed a Transportation Contract for Freight Broker (the "Transportation Contract"), which authorized AM Trans to act as a broker for MYR. Dkt. 74-5.

On December 10, 2015, MYR used Plant Site's software to solicit bids from motor carriers and brokers willing to transport a Peterbilt Boom Crane Truck (the "Crane Truck") from Oregon to Minnesota. Dkt. 74-6. This was a "drive away" shipment, meaning the motor carrier would need to hire someone

to personally drive the Crane Truck to its destination, rather than load it on another truck for shipment. *Id.* MYR selected AM Trans to broker the shipment. Dkt. 75 at 4. AM Trans hired Full Throttle to deliver the Crane Truck. Dkt. 1 ¶¶ 25-26; dkt. 1-3. Plant Site not verify Full Throttle's insurance. Dkt. 83 at 5.

A few days later, the Full Throttle employee who was transporting the Crane Truck was involved in an accident, and the Crane Truck was destroyed. Dkt. 1 ¶ 13; dkt. 74-7 at 1; dkt. 74-8. When Full Throttle filed a claim with its cargo-insurance provider, the insurance provider concluded that the accident fell outside of the cargo policy because the Crane Truck was not being transported as cargo but was "being driven under its own power during transportation." Dkt. 74-8. The insurance company therefore denied the claim. *Id.*

Seeking reimbursement for the wrecked Crane Truck, MYR filed a complaint on February 13, 2017, against Plant Site, AM Trans, and Full Throttle. Dkt. 1. AM Trans and Full Throttle failed to appear or otherwise defend the case, dkt. 31; dkt. 33, so the Clerk entered default against them, dkt. 35; dkt. 36. In its claim against Plant Site, MYR alleges that Plant Site breached the Agreement by failing verify Full Throttle's insurance. Dkt. 1 ¶¶ 31-36. Plant Site seeks summary judgment, arguing that it fulfilled its contractual duties to MYR by verifying AM Trans's insurance and that it had no duty to verify Full Throttle's insurance. Dkt. 73.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

In a diversity case, courts apply federal procedural law and state substantive law. *Allen v. Cedar Real Estate Grp., LLP*, 236 F.3d 374, 380 (7th Cir. 2001) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Rules for interpreting contracts are substantive, so the Court must apply state law in resolving the parties' dispute. *Id.* Neither party has raised a choice-of-law issue, so Indiana's substantive law applies. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). This Court is required to faithfully follow Indiana law by applying existing precedent and where it is not clear, trying to "predict how the [Indiana] supreme court would act given the chance." *In re Zimmer, NexGen Knee Implant Prod. Liability Litig.*, 884 F.3d 746, 750 (7th Cir. 2018).

**III.**
**Discussion**

Plant Site argues that it is entitled to summary judgment because it was not required by the terms of the Agreement to verify the insurance of motor carriers hired by brokers and therefore not required to verify Full Throttle's insurance. MYR argues that under the Agreement, Plant Site was obligated to verify all motor carriers' insurance and therefore was obligated to verify Full Throttle's insurance.

In a case of contract interpretation, the Court's goal "is to determine the intent of the parties at the time that they made the agreement." *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). The Court's analysis begins with the "plain language of the contract . . . construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Id.* A contract is ambiguous if "a reasonable person could find its terms susceptible to more than one interpretation." *Id.*

If the Court concludes that a contract is ambiguous, then the Court must consult evidence of the parties' intent in order to properly construe the ambiguous terms. *Id.* at 814. For example, the Court may determine the parties' intent by examining "their present and past business dealings." *Ind. Dep't of Correction v. Swanson Servs. Corp.*, 820 N.E.2d 733, 737 (Ind. Ct. App. 2005). In addition, "[e]vidence of industry practice is admissible to construe terms of art or ambiguous agreements." *Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049, 1059 (Ind. 2001).

If such evidence demonstrates the parties' intent without requiring the court to make a factual determination, then the dispute can be resolved at summary judgment. *In re Ind. State Fair Litig.*, 49 N.E.3d 545, 548 (Ind. 2016). But if interpreting the contract would require weighing extrinsic evidence, "its construction is a matter for the factfinder." *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010). Therefore, a court is permitted to resolve a contract dispute on summary judgment only when the contract is not ambiguous, or the contract ambiguity "can be resolved without the aid of a factual determination." *In re Ind. State Fair Litig.*, 49 N.E.3d at 548.

Here, the parties' dispute turns on the scope of Plant Site's contractual obligations created by the term "PSL shall verify carrier and broker insurance certifications." Dkt. 74-1 at 2. To determine the intent of the parties at the time they made the Agreement, the Court first looks to the plain language of the Agreement, "reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Citimortgage*, 975 N.E.2d at 805.

The relevant portion of the Agreement states: "[Plant Site] shall verify carrier and broker insurance certifications" and then goes on to list the various types of insurance Plant Site would require. Dkt. 74-1 at 2. A reasonable person could interpret the "and" to mean "both carrier insurance and broker insurance" for each shipment. The Agreement does not limit Plant Site's obligation by saying, for example, that Plant Site is not required to verify carrier insurance certifications where a broker hires the carrier or that Plant Site is

only required to verify carrier insurance in certain circumstances. On the other hand, the Agreement does not specify that Plant Site is obligated to verify carrier insurance in all instances, even when a broker selects carrier.

This leaves the Agreement susceptible to more than one reasonable interpretation. Under one interpretation, the Agreement required Plant Site to verify carrier-insurance certifications in any transaction Plant Site is involved with, even if its involvement is limited to engaging the broker. Under another interpretation, Plant Site was only required to verify the insurance of motor carriers that it approved in advance. A reasonable person reading the Agreement could arrive at either interpretation, so the Agreement is ambiguous. *Citimortgage*, 975 N.E.2d at 814.

Since the Agreement is ambiguous, the Court may consult "evidence of the parties' intent in order to properly construe the ambiguous terms." *Id.* But Plant Site has not designated evidence from which the Court may conclusively determine the parties' intent without weighing extrinsic evidence. The Court cannot determine what the parties intended when they entered the Agreement.

Plant Site argues the Transportation Contract demonstrates that AM Trans, rather than Plant Site, was responsible for verifying Full Throttle's insurance. Dkt. 75 at 11. But AM Trans's obligation under the Transportation Contract to verify Full Throttle's insurance does not necessarily negate or limit Plant Site's obligation under the Agreement to also verify Full Throttle's insurance. The parties may have intended Plant Site's "logistics optimization solutions" to include verifying carrier insurance even when the broker who

7

selects the carrier is also contractually obligated to ensure the carrier has insurance. Dkt. 74-1 at 1. Or not. But even after considering the Transportation Contract, it is not clear what the parties intended in this situation so summary judgment is not warranted. *In re Ind. State Fair Litig.*, 49 N.E.3d at 548.

To reach the result Plant Site seeks, the Court would have to make findings that are not supported by the designated evidence. For example, Plant Site claims that it only agreed to create a network of businesses that were approved to ship MYR's equipment, and that it was only required to verify the insurance of business as they were added to the network. Dkt. 75 ¶ 2. While this may be what the parties intended, that's not what the Agreement says, and Plant Site has not designated any extrinsic evidence showing this was the parties' intent.

Plant Site also argues it was not obligated to verify Full Throttle's insurance because of the Transportation Contract. Dkt. 83 at 5. But nothing in the Agreement (or any other evidence) says that Plant Site's obligation to verify a motor carrier's insurance is extinguished by MYR entering into a separate contract with a broker for the shipment. Moreover, Plant Site did not merely recommend AM Trans to MYR and then step aside; Plant Site retained AM Trans on behalf of MYR and is a signatory to the Transportation Contract. Dkt. 74-5 at 8. A finder of fact could conclude that the parties intended Plant Site to remain involved in any transaction brokered by AM Trans, including verifying insurance certificates of the carrier hired by AM Trans.

Finally, Plant Site claims that even if it was required to verify Full Throttle's insurance, it met this duty because Full Throttle had the required cargo insurance. Dkt. 83 at 8-9. But this misses the point. The Agreement does not say that Plant Site is relieved of its contractual obligation to verify insurance if it learns after the fact that the carrier had the necessary insurance. A finder of fact could still conclude, as MYR argues, that the obligation to verify carrier insurance was not negated under these circumstances.

Plant Site's concern that a ruling denying its motion for summary judgment may effectively rewrite the Agreement, dkt. 75 at 11, is without merit. The Court's ruling does not hold or suggest that Plant Site was required under the Agreement to verify Full Throttle's insurance. Rather, the Court holds only that making that determination is a task for a jury, not the Court on a motion for summary judgment.

## IV.
## Conclusion

The Court **DENIES** Plant Site's motion for summary judgment. Dkt. [73].

**SO ORDERED.**

Date: 8/28/2019

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Thomas Barlow Blackwell
BLACKWELL, BURKE & RAMSEY, P.C.

9

tblackwell@bbrlawpc.com

Travis W. Montgomery
KOPKA PINKUS DOLIN PC (Carmel)
twmontgomery@kopkalaw.com

Leslie B. Pollie
KOPKA PINKUS DOLIN PC
lbpollie@kopkalaw.com